(152 App. Div. 539.)

### RIGHTMYER v. DOYLE et al.

(Supreme Court, Appellate Division, Third Department. September 11, 1912.)

1. MUNICIPAL CORPORATIONS (§ 373*)—CONSTRUCTION CONTRACTS—SUBCONTRACTORS' LIENS.

That work performed by plaintiff in removing earth from a creek bed was available to him as part performance of a contract by him with the state for improving a highway, as well as performance of a subcontract on construction of a bridge under a contractor with a town, does not prevent him from enforcing his subcontractor's lien against the bridge fund in the hands of the town for the amount due him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

2. BAILMENT (§ 14*)—LIABILITY OF BAILEE—NEGLIGENCE.

A bridge contractor is not liable to a subcontractor for loss of tools brought to the work and used thereon under the subcontract, in the absence of a showing that the loss was caused by negligence, especially if he had previously directed removal of the tools, since ordinarily a bailee is not liable for loss of goods, in the absence of negligence on his part, contributing to the loss.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 45–56; Dec. Dig. § 14.*]

Appeal from Special Term, Columbia County.

Action by J. Clarence Rightmyer against Edward J. Doyle and others. From a judgment for plaintiff upon the report of a referee, defendants appeal. Reversed, and new trial granted conditionally.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

John J. McCall, of Albany, for appellants.
Harold Wilson, Jr., of Hudson, for respondent.

SMITH, P. J. This is an action brought to foreclose a lien filed by the respondent against certain moneys due the appellants Doyle and Johnston, comprising the contracting firm of E. J. Doyle & Co., from the towns of Greenport and Claverack, on account of the erection of a bridge over Claverack creek, which forms a boundary between said towns. The respondent's claim is for money due and owing to him from said contractors for services of men and teams, and also for tools and materials by him furnished. He also sues to foreclose another lien against said moneys, also for services and tools, assigned to him by one Van Hoesen. The defendant towns did not appear, and no personal judgment was entered against the appellants, but only a judgment directing said towns to pay the amount of both liens, as found, out of the funds due said contractors from said towns. The amount of the lien as filed by the respondent was for $1,000.61, and of the lien filed by Van Hoesen was $133.30. At a Special Term held in Columbia county March 16, 1911, Hon. J. Rider Cady was appointed a referee to hear and determine the issues herein, and from the judgment entered upon his report this appeal is taken.

[1] The total amount of respondent's claim as filed by him and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

apart from all credits conceded to appellants was $1,259.36, and, as found by the learned referee, was $1,129.65. Respondent admitted credits of $258.75, while the referee found credits applicable of $733.-89. This difference was largely due to the fact that the referee allowed as against respondent's claim as filed certain payments which respondent did not deny, but which he claimed were properly applicable to other work performed by him for these same contractors. Upon this point we think the finding of the referee was fairly supported by the evidence. A considerable item of respondent's claim is for teaming performed for these contractors during the month of August, 1910. The appellants claim that the bridge contract, on account of which this lien was filed, was completed by the last of July, and consequently that any services by respondent subsequent to that time are not covered by the lien filed. It appears that the teaming in question during August was largely done in connection with lowering the bed of the stream underneath the bridge. Appellant's contract with the two towns for the erection of this bridge specified: "Removing earth as shown on the plans in order to make the culvert available for carrying water." The plan showed a lowered and practically level creek bed under the bridge. and required considerable excavating there in order to widen and deepen the channel, and remove part of the embankment of the old bridge. It appears that subsequently to obtaining the bridge contract this contracting firm secured from the state a highway contract for building the road adjoining the bridge. This highway contract necessitated the use of a large amount of earth for filling at the approaches to the new bridge, and much of the earth removed from the bed of the creek during the month of August was actually used on the highway and its approaches. Appellants had no place from which to procure filling material without payment therefor other than the creek bed under and at either side of the bridge within the limits of the highway, and they now assert that respondent's claim for services during August was applicable for work under the highway contract only, and not under the bridge contract as filed. We think, however, that the fact that the same work might actually be in part performance of the two contracts does not prevent a recovery for it under the first or bridge contract. It appears from the evidence that most, if not all, of the removal of earth from the creek bed at this point was necessary to comply with the terms of the bridge contract, and, if this is so, such removal was fairly work done under the bridge contract, irrespective of where the soil so removed was finally placed, and whether or not its ultimate disposal in a particular location might also help to complete the highway contract, provided that such placing did not add to the cost of removal, of which there is no proof.

[2] The second clause of action, which covered the lien filed by Van Hoesen, respondent's assignor, was for a total amount of $163.80 with credits admitted of $30.50, and was found by the referee at $172.45, with credits of $42.80. Of the amounts claimed and allowed the sum of $50.05 was claimed by respondent on account of tools and implements furnished the appellants at their request, and the referee

allowed respondent for these items the sum of $49.65. It appears that these tools belonged to Van Hoesen, and had been taken to the work for use on the bridge contract. There is evidence that they were so used in the early part of the job, but were not much used later on, that they were stored near the bridge in a box in a certain barn rented by the contractors, and that they were there destroyed, together with property owned by the contractors, by a fire that burned the barn and its contents in the fall of 1910. Appellant Doyle testifies that prior to this fire in April, and again in September or October, Van Hoesen was notified to remove his tools from the job on the ground that they were not needed. This evidence is in part confirmed by the testimony of his partner Johnston and his attorney Brady, and is not contradicted by Van Hoesen. It does not appear what part, if any, of these tools was used up or lost on the work prior to the fire or prior to appellant's orders to remove them. We accordingly think the appellants could not be charged with practically the total value of these tools as was found by the referee. Even if these tools were brought to the work and used thereon pursuant to agreement, the appellants surely were not liable for any loss resulting from the destruction of such articles by fire, without the negligence of appellants, and especially after they had previously directed the removal of the tools. A bailee is ordinarily not liable for the loss of goods of another in his possession in the absence of negligence on his part contributing to the loss. It may also be noted that the evidence regarding Van Hoesen's claim of $48 for services rendered is not at all conclusive, but may possibly be regarded as sufficient to sustain the referee's finding in allowing this sum.

A number of alleged errors by the referee are assigned by appellants upon this appeal, especially as regard the rate per day of the teams, the amount and price of the stone delivered, and the amounts of the credits allowed for coal and lumber. As to all of these matters, it may be briefly said that the evidence was conflicting, but upon an examination of the record we are not persuaded that the referee's findings in these respects were contrary to the weight of evidence. The judgment should be reversed on law and fact and a new trial granted with costs to appellant to abide event, unless plaintiff will consent to a reduction of the judgment to exclude the value of the tools furnished by plaintiff's assignor, in which case judgment as so reduced is affirmed without costs to either party.

Judgment reversed, referee discharged, and new trial granted with costs to appellants to abide event, unless plaintiff consents to a reduction of the judgment to exclude the value of the tools furnished by plaintiff's assignor, in which case the judgment as so reduced is affirmed without costs to either party. This reversal is upon the ground that the evidence does not show that the defendant was guilty of any negligence in the loss of the tools sued for in the second cause of action. All concur.